GILBRIDE, TUSA, LAST & SPELLANE, LLC
Todd S. Sharinn
986 Bedford Street
Stamford, CT 06905
Telephone: (203) 542-8418
Facsimile: (203) 622-9392
tss@gtlslaw.com

*Attorneys for Plaintiff*
*THIS, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-------------------------------------------------x
| | : | Civil Action No.: |
| THIS, LLC | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| HOLABELLE, INC. a/k/a | : | |
| KOOKOODOO FUN PLAY, INC., | : | |
| YA LAN YANG a/k/a YALAN YANG | : | |
| a/k/a STELLA YANG, | : | |
| TODD GLONEK, | : | |
| THE STOP AND SHOP | : | |
| SUPERMARKET COMPANY, LLC, | : | |
| AHOLD DELHAIZE USA, INC., | : | |
| ALBERTSONS COMPANIES, INC., | : | |
| THE VONS COMPANIES, INC., | : | |
| BALDUCCI'S FOOD LOVER'S | : | |
| MARKET, KINGS FOOD MARKETS, | : | |
| SAFEWAY, INC. | : | |
| JOHN DOES 1-10 (presently unknown | : | |
| and fictitiously identified entities), | : | |
| ABC CORPORATIONS 1-25 | : | |
| (presently unknown and fictitiously | : | |
| identified entities) | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------x

Plaintiff THIS, LLC ("TLLC"), by and through its attorneys, alleges as and for its complaint ("Complaint") against HolaBelle, Inc. a/k/a KooKooDoo Fun Play, Inc. ("HolaBelle"), Ya Lan Yang a/k/a Yalan Yang a/k/a Stella Yang ("Defendant Yang"), Todd Glonek ("Defendant Glonek"), The Stop & Shop Supermarket Company, LLC ("Stop & Shop"), Ahold Delhaize USA, Inc. ("Ahold"), Albertsons Companies, Inc. ("Albertsons"), The Vons Companies, Inc. ("Vons"), Balducci's Food Lover's Market ("Balducci's"), Kings Food Markets ("Kings"), Safeway, Inc. ("Safeway"), ABC Corporations 1-25 (presently unknown and fictitiously identified entities) (the "ABC Corporations"), and John Does 1-10 (presently unknown and fictitiously identified entities) ("John Does" and, collectively, the "Defendants") as follows:

## NATURE AND BASIS OF ACTION

1.      This is an action for federal trademark counterfeiting, trademark infringement, trade dress infringement, unfair competition, false designation of origin, false advertising, and federal trademark dilution under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et. seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 and the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-154 (July 2, 1996); copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et. seq.*; trade secret theft under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*; unfair competition, breach of fiduciary duty, unjust enrichment, conversion, and tortious interference with business relations under Connecticut common law; and under the laws of the State of Connecticut for unfair trade practices pursuant to C.G.S.A. §§ 42-110b, *et seq.*

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.

3.      This Court has jurisdiction pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367 over TLLC's claims arising under the laws of the State of Connecticut in that such claims arise out of the same nucleus of operative facts as the substantial federal law claims to which they are joined.

4.      This Court has personal jurisdiction over Defendants in that they regularly conduct and transact substantial and ongoing business in the State of Connecticut.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c) in that the defendants are entities subject to personal jurisdiction in this Judicial District.

## THE PARTIES

6. Plaintiff TLLC is a limited liability company duly organized and existing under the laws of the State of Connecticut, having a principal place of business at 19 Timber Ridge Road, Madison, Connecticut 06443.

7. Defendant HolaBelle is a corporation organized and existing under the laws of the State of California, and having a place of business located at 7211 Haven Ave, Suite E602, Alta Loma, California 91701.  Upon information and belief, Defendant HolaBelle conducts and transacts business in the State of Connecticut and in this Judicial District. In addition, upon information and belief, Defendant HolaBelle regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://holabelle.org> ("HolaBelle's Website"), in the State of Connecticut and this Judicial District.

8. Defendant Yang is an individual who is the registered agent for and engaged with HolaBelle in the unauthorized manufacture, distribution, offer for sale, and/or sale of merchandise: (1) incorporating copies of TLLC's trademarked and copyrighted materials, and/or (2) bearing

3

counterfeits, copies, or imitations of TLLC's trademarks and trade dress. Defendant Yang resides in the State of California and, upon information and belief, transacts business in the State of Connecticut and in this Judicial District.

9. Defendant Glonek is an individual who is engaged with HolaBelle in the unauthorized manufacture, distribution, offering for sale and/or sale of merchandise: (1) incorporating copies of TLLC's trademarked and copyrighted materials, and/or (2) bearing counterfeits, copies, or imitations of TLLC's trademarks and trade dress. Defendant Glonek resides in California and, upon information and belief, transacts business in the State of Connecticut.

10. Defendant Stop & Shop is a limited liability company organized and existing under the laws of the State of Delaware and having a place of business located at 1385 Hancock Street, Quincy, Massachusetts 02169. Stop & Shop conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District. In addition, Stop & Shop regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://stopandshop.com> ("Stop & Shop's Website"), in the State of Connecticut and this Judicial District.

11. Defendant Ahold is a corporation organized and existing under the laws of the State of Delaware and having a place of business located at 1385 Hancock Street, Quincy, Massachusetts 02169. Upon information and belief, Ahold conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District. In addition, Ahold and its subsidiaries regularly transact and conduct business over the Internet through at least one website located on the World Wide Web at the URL <https://aholddelhaize.com> ("Ahold's Website"), in the State of Connecticut and this Judicial District.

12. Defendant Albertsons is a corporation organized and existing under the laws of the

4

State of Delaware and having a principal place of business located at 250 East Parkcenter Boulevard, Boise, Idaho 83706.  Upon information and belief, Albertsons and its subsidiaries conduct, transact, and maintain ongoing business in the State of Connecticut and in this Judicial District. In addition, Albertsons regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://albertsons.com> ("Albertsons' Website"), in the State of Connecticut and this Judicial District.

14. Defendant Vons is a corporation organized and existing under the laws of the State of Delaware and having a place of business located at 1421 Manhattan Avenue, Fullerton, California 92831. Upon information and belief, Vons conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District.  In addition, Vons regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://vons.com> ("Vons' Website"), in the State of Connecticut and this Judicial District.

14. Upon information and belief, Defendant Balducci's is a corporation organized and existing under the laws of the State of Delaware and having a place of business located at 250 East Parkcenter Boulevard, Boise, Idaho 83706. Balducci's conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District.  In addition, Balducci's regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://balduccis.com> ("Balducci's Website"), in the State of Connecticut and this Judicial District.

15. Upon information and belief, Defendant Kings is a corporation organized and existing under the laws of the State of Delaware and having a place of business located at 700

Lanidex Plaza, #100, Parsippany-Troy Hills, New Jersey 07054. Upon information and belief, Kings conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District.  In addition, Kings regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://kingsfoodmarkets.com> ("Kings' Website"), in the State of Connecticut and this Judicial District.

16.     Defendant Safeway is a corporation organized and existing under the laws of the State of Delaware and having a place of business located at 5918 Stoneridge Mall Road, Pleasanton, California 94588. Upon information and belief, Safeway conducts, transacts, and maintains ongoing business in the State of Connecticut and in this Judicial District.  In addition, Safeway regularly transacts and conducts business over the Internet through at least one website located on the World Wide Web at the URL <https://safeway.com> ("Safeway's Website" and, collectively with HolaBelle's Website, Ahold's Website, Stop & Shop's Website, Albertsons' Website, Vons' Website, Balducci's Website, and Kings' Website, the "Defendants' Websites"), in the State of Connecticut and this Judicial District.

## BACKGROUND FACTS

### TLLC'S BUSINESS

17.     For twenty-five (25) years and since long prior to the acts of Defendants alleged herein, TLLC has been and is presently engaged in manufacturing, distributing, offering for sale, and selling unique novelty items, which, among other things, include household utensils, including wooden cooking skewers for roasting marshmallows over an open fire or in a fireplace (the "TLLC Products") in interstate, intrastate, and international commerce under and in connection with, among others, its SMORSTIX® and THE PERFECT MARSHMALLOW ROASTING STIX®

trademarks. **Exhibit A**.

18.     The TLLC Products have been marketed, offered for sale, and sold under and in connection with TLLC's well-known SMORSTIX® trademark for twenty-five (25) years, both alone or as a part of kits, which have been marketed, offered for sale, and sold under and in connection with TLLC's SMORPAK® trademark for more than twenty (20) years. **Exhibit B**.

19.     In addition to four (4) genuine SMORSTIX® branded wooden cooking skewers, TLLC's genuine SMORPAK® kits contain an assortment of brand name high quality food products along with printed instructions sold as a unit for making various types of family friendly snacks.

20.     TLLC's genuine SMORSTIX® branded TLLC Products specifically consists of:

a.     A package of four (4) 30 inch wooden skewers that TLLC found to be the ideal roasting length; and

b.     Written recipes and instructions to guide its consumers on the safe, proper and correct use of its goods.

21.     TLLC's SMORSTIX® packaging also features TLLC's THE PERFECT MARSHMALLOW ROASTING STIX® trademark on every wooden skewer packaging. **Exhibit A**.

22.     TLLC has and continues to distribute, market, offer for sale, and sell the TLLC Products throughout the United States and around the world through traditional brick and mortar channels of trade and over the Internet through TLLC's operation and maintenance of a website (the "TLLC Website") located on the World Wide Web at the URL <www.smorstix.com> (**Exhibit C**), as well as through authorized third-party merchant websites and online stores. **Exhibit D**.

23.     The genuine TLLC Products have been and continue to be sold in many countries around the world and are readily available and sold at, among other places, Kampgrounds Of

America, campsites and campground stores, supermarkets, drug stores, convenience markets, hardware stores, home goods stores, party supply stores, RV supply stores, candy stores, corn mazes, hotel chains, inns, ski resorts, and prestigious universities and colleges including, without limitation, Hyatt Hotels, Ritz Carlton Hotels, ShopRite, Bucknell University, Cornell University, and George Washington University, among many others.

24.     TLLC created the TLLC Products as a clean, safe, and natural alternative to locating sticks in the wild. The TLLC Products were conceived of and created by TLLC in an effort to ensure that its customers, particularly families and campers, enjoy the outdoors in a safe, easy, and ecologically friendly manner. In fact, TLLC specifically explains on the TLLC Website that "[v]ery often, sticks are scarce, dirty, too short, in a patch of poison ivy, or in a thorny briar patch. Campers often trample underbrush and damage trees and forests in their search." *See* **Exhibit C**.

25.     Throughout TLLC's history and since long prior to the acts of Defendants complained of herein, TLLC created unique and original packaging and labeling, which in the case of TLLC's genuine SMORSTIX® product has been packaged by TLLC, without interruption, in a clear elongated bag containing four (4) 30" wooden skewers with a heavy stock paper fold over label attached at the top of the bag and securing the skewers within (the "TLLC Packaging").  The TLLC Packaging is child-friendly, and allows parents to observe exactly what they are purchasing in advance.  **Exhibit E**.

26.     TLLC incorporates in each of its Products and Packaging the same original and distinct design elements and other trade features that continue to be closely associated with TLLC in the eyes of the public and customers for twenty-five (25) years. TLLC has used its original, ornamental, fanciful, and unique graphics, logos, artwork, designs, and product configurations (the "TLLC Trade Dress") on and in connection with TLLC's manufacture, distribution, marketing,

offering for sale and sale of ***all*** genuine TLLC Products, which in the case of TLLC's genuine SMORSTIX® products feature, *inter alia*, toasted marshmallows on sticks, as well as warm, bright tones that elicit the feeling of a warm and cozy campfire during a fun night with the family. Specifically, all genuine SMORSTIX® products prominently feature the same cartoon-like toasted marshmallow on a stick that bisects TLLC's well-known registered SMORSTIX® trademark down the length of the packaging. **Exhibit A**, **Exhibit E**.

27.     TLLC's retail customers regularly and prominently offer genuine TLLC Products in TLLC's unique, original, and inherently distinctive product display stands (the "TLLC Display"), and have done so throughout TLLC's twenty-five (25) year history. The TLLC Display comprises a cardboard display box with a high back, angular side cutouts partially exposing the genuine SMORSTIX® products oriented and organized therein, and a front portion sized to highlight the full length of the labels of the individual genuine SMORSTIX® products on display therein. The genuine SMORSTIX® products are oriented, organized, and arranged side-by-side in four (4) neat rows running the depth of the display. **Exhibit F**.

28.     Like the TLLC Packaging, the TLLC Display includes bright and warm tones, features toasted marshmallows on sticks, and evokes the feeling of a warm and cozy campfire, and of a fun night with the family. Specifically, the TLLC Display prominently features TLLC's well-known cartoon-like toasted marshmallow on a stick running parallel with TLLC's well-known registered SMORSTIX® trademark across the top of the display's bottom portion and horizontally along each of the side portions, in addition to additional toasted marshmallows on sticks drawing a consumer's eye toward TLLC's well-known registered SMORSTIX® trademark across the top of the display's bottom portion. **Exhibit F**.

29.     TLLC has marketed, advertised, displayed, offered for sale, and sold the TLLC

Products using the same TLLC Packaging and Display throughout its entire twenty-five (25) year history. Both the TLLC Packaging and Display have featured TLLC's inherently distinctive labeling, graphics, sizes, shapes, and overall product configurations. Customers, both wholesale and retail alike, have come to recognize and associate the TLLC Packaging and Display, as well as the inherent TLLC Trade Dress exhibited thereby as originating from TLLC, and as a result the TLLC Packaging and Display have acquired substantial goodwill in addition to serving as valuable source identifiers.

### TLLC'S INTELLECTUAL PROPERTY

30.     For many years and since long prior to the acts of Defendants complained of herein, TLLC has been and remains the sole owner of all right, title, and interest in and to multiple United States Registered Trademarks, logos, slogans and trade names, which include SMORSTIX®; SMORPAK®; THE PERFECT MARSHMALLOW ROASTING STIX®; EVERYTHING BUT THE CAMPFIRE®; SMORNAMENT®; SMORBOX®; and SMORBAR®.

31.     The TLLC Marks (as hereinafter defined) have been continuously and robustly used on and in connection with the advertising, promotion, manufacture, offer for sale, and sale of the TLLC Products and in connection with related Packaging and Display in the United States and throughout the world in interstate and intrastate commerce.

32.     TLLC is the owner in and to the following United States Trademark Registrations (the "TLLC U.S. Registrations"):

| UNITED STATES REG. NO. | MARK | REG. DATE |
|---|---|---|
| 2,453,828 | SMORSTIX | May 22, 2001 |
| 2,698,364 | SMORPAK | March 18, 2003 |
| 2,661,336 | THE PERFECT MARSHMALLOW ROASTING STIX | December 17, 2002 |
| 2,899,136 | EVERYTHING BUT THE CAMPFIRE | November 2, 2004 |

10

| UNITED STATES REG. NO. | MARK | REG. DATE |
|---|---|---|
| 4,203,326 | SMORNAMENT | September 4, 2012 |
| 4,032,274 | SMORBOX | September 27, 2011 |
| 4,046,041 | SMORBAR | October 25, 2011 |

Computer printouts of the United States Patent and Trademark Office ("USPTO") records for the TLLC U.S. Registrations are annexed hereto as **Exhibit G**.

33.     The TLLC U.S. Registrations are valid, incontestable, subsisting, unrevoked, and uncancelled.  Registration of the underlying trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of TLLC's exclusive right to use the TLLC Marks in commerce on and in connection with the goods named in the TLLC U.S. Registrations, and commercially related goods. The TLLC U.S. Registrations also constitute constructive notice to Defendants of TLLC's ownership and exclusive rights in and to the TLLC Marks.

34.     The dates of first use in interstate commerce for the TLLC U.S. Registrations are:

| UNITED STATES REG. NO. | MARK | DATE OF FIRST USE IN COMMERCE |
|---|---|---|
| 2,453,828 | SMORSTIX | July 3, 1999 |
| 2,698,364 | SMORPAK | March 2002 |
| 2,661,336 | THE PERFECT MARSHMALLOW ROASTING STIX | August 17, 1999 |
| 2,899,136 | EVERYTHING BUT THE CAMPFIRE | January 2001 |
| 4,203,326 | SMORNAMENT | April 30, 2011 |
| 4,032,274 | SMORBOX | May 27, 2011 |
| 4,046,041 | SMORBAR | June 2, 2011 |

35.     TLLC is also the owner in and to the following International Trademark Registrations (the "TLLC Int'l Registrations" and, collectively with the TLLC U.S. Registrations,

11

the "TLLC Marks"):

| COUNTRY | MARK | REGISTRATION NUMBER |
|---------|------|---------------------|
| CANADA | SMORPAK | 722,618 |
| CANADA | SMORBOX | 857,306 |
| CANADA | SMORSTIX | 722,597 |
| COMMUNITY TRADEMARK | SMORSTIX | 005 222 120 |
| COMMUNITY TRADEMARK | SMORPAK | 005 205 745 |
| MEXICO | SMORPAK | 973,523 973,520 |
| MEXICO | SMORSTIX | 973,522 373,521 |
| MEXICO | SMORBOX | 1,193,762 |

36.     Moreover, all TLLC Products and their associated Packaging and Display contain proprietary, original, and ornamentally unique works, which constitute copyrightable subject matter pursuant to 17 U.S.C. §102(a) (jointly, the "TLLC Copyrights").

37.     The TLLC Copyrights have been registered with the United States Copyright Office ("USCO") and assigned the following designations: (1) copyright Registration Number VA-0001687117, since June 5, 2008; (2) copyright Registration Number VA-0002003467, since February 18, 2016; and (3) Registration Number VA-0002035786, since February 18, 2016, all of which are valid and subsisting. The TLLC Copyrights are directed to, *inter alia*, certain of the original graphics, text, and design elements included on the TLLC Packaging and Display. **Exhibit H**.

38.     TLLC is the sole owner of all rights, title, and interest in and to the TLLC Copyrights, and the copyrights to the original works depicted on the TLLC Packaging and Display, as provided by the Copyright Laws.

39.     TLLC has also used, among others, the tradename "SMORSTIX" since at least

1999 (the "TLLC Tradename" and, collectively with the TLLC Marks, Trade Dress and Copyrights as the "TLLC IP").

40.     For many years and since long prior to the acts of Defendants complained of herein, TLLC has and continues to expend substantial efforts, resources, and funds to establish and market the TLLC IP, Products, Packaging and Display, the related goods and services and the abundant associated goodwill, by utilizing targeted trade and promotional literature, direct marketing, word of mouth, and the creation and maintenance of the TLLC Web-Site, which includes an online store.

41.     TLLC Products have been discussed, broadcasted, and positively reviewed in various media, including InkCT and the National Marshmallow Roasters Institute's webpage. *See* the relevant pages of these websites annexed hereto as **Exhibit I**.

42.     In addition, the development of strong and lasting customer relationships has been a hallmark of TLLC, which has fostered strong and enduring relationships based upon trust and integrity.  As a direct and proximate result of TLLC's extensive efforts to develop and maintain strong and lasting consumer relationships and TLLC's continuous robust promotion of the TLLC Products, Packaging and Display under and in connection with the TLLC IP, TLLC and the TLLC IP have become safe and reliable source identifiers and acquired substantial good will and an excellent reputation in the industry that rises to the level of being famous.

43.     In its twenty-five (25) year history, TLLC has never had a single consumer complaint, or any concern or issue raised by a governmental agency regulating consumer safety or otherwise.

44.     As a result of TLLC's efforts and of TLLC's continuous and extensive use of the TLLC IP, the TLLC IP, Products, Packaging and Display have acquired substantial goodwill and value as source identifiers of TLLC and the related goods and services TLLC provides.

45.     The trade and public have come to associate the TLLC IP, Products, Packing and Display exclusively with TLLC as a result of:

      a.      TLLC's extensive advertising and promotion of the TLLC Products;

      b.      The strong and longstanding client consumer relationships and concomitant word-of mouth publicity engendered by the TLLC IP and the TLLC Products, Packaging and Display;

      c.      The care and skill exercised by TLLC in the provision of its goods offered under and in connection with the TLLC IP;

      d.      The uniformly high quality of the TLLC Products, Packaging, and Display provided under and in connection with the TLLC IP; and

      e.      The trade and public's acceptance of the TLLC IP, Packaging and Display as symbols of valuable and inestimable goodwill.

46.     TLLC marks each TLLC Product and their associated TLLC Packaging and Displays, as well as all relevant marketing materials, in accordance with and subject to the relevant United States Trademark and Copyright Laws and most particularly 15 U.S.C. § 1111 and 17 U.S.C. § 401 respectively, which constitutes actual and constructive notice to Defendants of TLLC's ownership in and to the TLLC IP used on, in, or in connection with TLLC's manufacture, distribution, marketing, offering for sale, and sale of the TLLC Products.

## DEFENDANTS' INFRINGING ACTS

47.     The Defendants cooperate in the business of manufacturing, distributing, marketing, offering for sale, and/or selling camping accessories, toys, other recreational products, groceries, and sales services on both a national and international level.

48.     Many years after TLLC's creation, selection, adoption, use, and marketing of the TLLC IP, Products, Packaging and Display in commerce in the United States, Defendants, without

authorization or license from TLLC, have and continue to knowingly and willfully manufacture, distribute, market, offer for sale, and/or sell counterfeit and infringing packaged wooden skewers styled "Mallosticks":

    a.    Having identical dimensions and configurations to those of the TLLC Products ("Infringing Mallosticks") (**Exhibit J**);

    b.    Slavishly copying the TLLC Trade Dress, the TLLC Packaging, and the TLLC Display through the use of identical design elements, artwork, text, and graphics to purposefully, overtly, and confusingly copy TLLC's logos, designs, artwork, and graphics (respectively, the "Infringing Trade Dress," the "Infringing Packaging," and the "Infringing Display" and, collectively, the "Infringing Designs");

    c.    Under the confusingly similar name "MALLOSTICKS" and featuring confusingly similar slogans including, but not limited to "THE BEST MARSHMALLOW ROASTING STICK," and "THE PERFECT MARSHMALLOW ROASTING STICK," which are essentially identical to TLLC's registered "SMORSTIX®" and "THE PERFECT MARSHMALLOW ROASTING STIX®" trademarks (the "Infringing Names" and, collectively with the Infringing Mallosticks and the Infringing Designs, the "Infringing Products") (**Exhibit J**); and

    d.    Relying upon product labels, packaging, displays, and product descriptions virtually (and in some respects actually) identical to the TLLC Packaging and Displays.

49.    Defendants, without authorization or license from TLLC, have knowingly and

willfully used and continue to use the TLLC IP on and in connection with Defendants' advertisement of the Infringing Products, through traditional brick and mortar channels of trade and their operation and maintenance of the Defendants' Websites, as well as being offered for sale through third party retailers. **Exhibit K**.

50.     Defendants cause confusion and deceive the public by combining the same design elements, colors, text, and graphics as those present in the TLLC Packaging, the TLLC Trade Dress, and the TLLC Display for use on and in connection with identical goods, packaging and displays to those originating with TLLC, including, but not limited to:

   a.   The explicit mimicking of the layout, designs, and graphics of the TLLC Packaging, as illustrated by a side-by-side comparison of the genuine SMORSTIX® Products and the Infringing Products, which engender a strikingly similar commercial impression on ordinary consumers of such products:



   b.   The identical placement of a wooden marshmallow roasting stick bisecting the

product title and running the length of the packaging, with a stylized depiction of a
skewered marshmallow at the top of such packaging;

c.   The similar reliance on a palette of browns, oranges, reds, and yellows on the
Infringing Packaging to evoke the feeling of a family gathered around a campfire
at nighttime;

d.   The explicit, verbatim copying (apart from a number of misspellings) of the
product description that appears at the bottom of the front side of the TLLC
Packaging and at the top of the back side of the TLLC Packaging in the
corresponding areas of the Infringing Packaging, even presenting the text in a
manner practically indistinguishable from TLLC:

| SMORSTIX® Packaging Description (Front) | Infringing Packaging Description (Front) |
|---|---|
| <ul><li>Quatre bâtonnets prêts à utiliser pour griller les guimauves</li><li>Four Ready-to-Use Marshmallow Roasting STIX</li><li>Propres et sécuritaires</li><li>Clean & Safe</li><li>Biodégradables</li><li>Biodegradable</li></ul> | <ul><li>Quatre bâtonnets prêts à utiliser pour griller les guimauves</li><li>Propres et sécuritaires</li><li>Biodégradables</li><li>Four Ready-to-Use Marshmellow Roasting Sticks</li><li>Clean & Safe</li><li>Biodegradable</li></ul> |
| **SMORSTIX® Packaging Description (Back)** | **Infringing Packaging Description (Back)** |
| **Parfait pour les pique-niques, campings, barbecues, feux de camp, feux de foyer**<br><br>**Great for Picnics, Bar-B-Q's, Campfires & Fireplaces**<br><br>**www.smorstix.com** | **Parfait pour les pique-niquesd, campings, barbecues. feux de camp, feux de foyer**<br><br>**Great for Pinics, Bar-B-Q's, Campfires & Fireplaces** |

| | |
|---|---|
| **Noter:**<br>Ne jamais jouer avec le feu!<br>Ne pas utiliser sans la supervision d'un adulte<br>Exercez prudence et bon sens en tout temps.<br><br>**Note:**<br>Never play with fire! Use with adult supervision.<br>Good sense & caution should always be<br>exercised. | **Noter:**<br>Ne jamais jouer avec le feu!<br>Ne pas utilizer sans la supervision d'un adulte.<br>Exercez prudence et bon sens en tout temps.<br><br>**Note:**<br>Never play with fire! Use with adult<br>supervision. Good sense & caution should<br>always sbe exercised. |

*Compare* **Exhibit A** and **Exhibit J**.

> e. The copying of TLLC's valuable and registered THE PERFECT MARSHMALLOW ROASTING STIX® trademark on the Infringing Display, including the identical use of yellow to highlight, set-off, and distinguish the word "PERFECT" in the slogan on the Infringing Display:

 

18

f. The mimicking of TLLC's valuable and registered THE PERFECT MARSHMALLOW ROASTING STIX® trademark on the Infringing Packaging, including the identical use of yellow to highlight, set-off, and distinguish the word "BEST" in the slogan on the Infringing Packaging;

g. The copying of TLLC's valuable and registered SMORSTIX® trademark on the Infringing Packaging and the Infringing Display by and through Defendants' use of the confusingly similar "MALLOSTICKS" term to promote the Infringing Products.

51.     In addition to the Infringing Names' confusingly similar appearance, sound, connotation, and commercial impression to those of TLLC's longtime registered SMORSTIX® and THE PERFECT MARSHMALLOW ROASTING STIX® trademarks, the Defendants' Infringing Designs use suggestive and colorable imitations of the works that are the subject of the TLLC IP. Specifically, like TLLC has done for twenty-five (25) years, Defendants rely on the integration of confusingly similar names, slogans, design elements, and text, and blatant copies of TLLC's copyrighted artwork and images of toasting marshmallows on sticks drawing attention to the Infringing Names on such Infringing Packaging and Infringing Displays. *Compare* **Exhibit A**, **Exhibit F**, and **Exhibit J**.

52.     Also highlighted by a comparison of **Exhibit A**, **Exhibit F**, and **Exhibit J** is the unassailable fact that Defendants' Infringing Products, Packaging, and Display are of the same shape, size, and overall configuration as that of the genuine TLLC Products, Packaging and Display:

53.     Like the genuine TLLC Packaging, the Infringing Packaging consists of a clear plastic elongated bag containing four (4) wooden skewers with a heavy stock paper fold over label

deliberately and prominently displaying counterfeit copies of the TLLC IP attached at the top of the bag and securing the four (4) skewers within. Adding to the likelihood of confusion, both the genuine individual SMORSTIX® packages and the Infringing Products are displayed in neatly arranged rows, four (4) across, in a cardboard floor display box, which like the genuine TLLC Display, has a high back, angular side cutouts partially exposing the products organized therein, and a front portion running from both the bottom of the labels of the products on display therein. Adding insult to injury, Defendants' Infringing Display, like the TLLC Display, is not only constructed with the same shape, style, and overall appearance, but also Defendants organize and display the Infringing Products in a virtually identical orientation to that found on TLLC's genuine SMORSTIX® products.

54.     TLLC learned of the Defendants' offering for sale and sale of the Infringing Products on or about November 1, 2023, when TLLC was informed that Stop & Shop would be terminating its longstanding business relationship with TLLC, through which TLLC had supplied Stop & Shop with more than $300,000.00 worth of SMORSTIX® products over the prior twenty-five (25) years. TLLC was additionally informed that, moving forward, Stop & Shop would be fulfilling its wooden roasting stick needs by replacing genuine SMORSTIX® products with the Infringing Products.

55.     Upon reviewing the Infringing Products and learning that counterfeit and infringing SMORSTIX® products were being actively manufactured, distributed, offered for sale, and sold in interstate and intrastate commerce in the United States, TLLC conducted an investigation and determined that HolaBelle, Defendant Yang, Ahold, and Stop & Shop have been engaged in the purchase and sale of the Infringing Products.

56.     Upon information and belief, and as described above, Ahold and Stop & Shop have

entered into an agreement with HolaBelle and Defendant Yang to purchase and sell the Infringing Products at the expense of the genuine TLLC Products.

57.     Following TLLC's reasonable inquiry, HolaBelle, Defendant Yang, Ahold, and Stop & Shop were placed on notice on or about November 16, 2023, within weeks of TLLC's discovery of the Infringing Products, through cease and desist letters sent by undersigned counsel. **Exhibit L**.

58.     Shortly afterward, it came to TLLC's attention that Albertsons has sold and is actively selling the Infringing Products both directly and through various subsidiaries, including Vons, in interstate and intrastate commerce throughout the United States.

59.     Upon learning that Albertsons and Vons are selling the Infringing Products alongside genuine SMORSTIX® products, TLLC dispatched additional cease and desist letters to both Albertsons and Vons through undersigned counsel on or about November 27, 2023. **Exhibit M**.

60.     The following day, November 28, 2023, TLLC dispatched a third set of cease-and-desist letters, again through undersigned counsel, to Safeway, Kings, and Balducci's after it came to light that all three (3) businesses had also engaged in the sale of the Infringing Products (together with the cease-and-desist letters dispatched to the other Defendants, the "C&D Letters"). **Exhibit N**.

61.     The C&D Letters, based on TLLC's reasonable investigation and belief that the Infringing Products are illicit and illegal counterfeit goods, demanded that the Defendants immediately "cease[] and desist from marketing, distributing, offering for sale, or selling the subject Infringing Products." **Exhibits L, M, and N**.

62.     Upon information and belief, the Defendants had actual or constructive knowledge

that the Infringing Products were counterfeits of the TLLC Products, and purposefully continued to manufacture, distribute, offer for sale, and/or sell the Infringing Products nonetheless.

63.     In fact, between 2009 and 2018, Defendant Glonek worked for TLLC as a National Account Manager, in which capacity Defendant Glonek facilitated the sale of and sold the TLLC Products to an array of markets, grocers, and businesses across the United States, including, but not limited to Albertsons and its subsidiaries.

64.     In the course of Defendant Glonek's many years as a sales representative for TLLC, Defendant Glonek had regular access to and became deeply familiar with TLLC's confidential, valuable, and proprietary information, including, but not limited to TLLC's costs information, marketing strategy, sales information, e-commerce data, and pricing information for the TLLC Products and various confidential details relating to TLLC's manufacturers, suppliers, vendors, and customers, all of which TLLC went to great lengths to keep confidential (collectively, the "TLLC Confidential Information").

65.     During his nearly ten (10) years with TLLC, Defendant Glonek additionally "bec[a]me familiar with the quality and characteristics of the TLLC Products and their associated trademarks, trade names, trade dress and copyright rights," as Defendant Glonek himself admitted in a sworn Declaration dated November 4, 2015, which was submitted in support of TLLC's Application for a Temporary Restraining Order and an Order to Show Cause for a Preliminary Injunction in connection with a now-resolved trademark infringement case in the United States District Court for the District of Connecticut, captioned Civil Action No. 3:15-cv-1606 (DKT. 3-4) (the "Glonek Declaration"). **Exhibit O**.

66.     Defendant Glonek acknowledged in the Glonek Declaration that the "TLLC Products have always incorporated the same original and distinct design elements and other trade

features, which continue to be closely associated with TLLC in the eyes of the public and consumers." **Exhibit O**, at ¶ 11.

67.     In his declaration, Defendant Glonek additionally identified the distinctive elements of the TLLC Packaging and the TLLC Display, which encompass, *inter alia*, "bright and warm tones," "toasted marshmallows on sticks," and "TLLC's well-known cartoon like toasted marshmallow on a stick running parallel with TLLC's well-known registered SMORSTIX® trademark across the top," *see* **Exhibit O**, at ¶¶ 12-13.

68.     As a result of Defendant Glonek's longstanding employment relationship with TLLC, during which he became intimately familiar with not only the TLLC Confidential Information, but also the TLLC IP and TLLC's litigation strategy and other mechanisms for combating infringement of the TLLC Products and the TLLC IP, to the point where Defendant Glonek was entrusted with and played a key role in such litigation, Defendant Glonek owed a fiduciary duty to TLLC which included, but was not limited to the duty of good faith, loyalty, and fair dealing.

69.     In or around early 2018, TLLC terminated its employment relationship with Defendant Glonek.

70.     Thereafter, Defendant Glonek entered into a business relationship or otherwise engaged with HolaBelle and Defendant Yang and, upon information and belief, exploited his detailed knowledge of the TLLC Confidential Information and the TLLC IP in order to, *inter alia*, facilitate, orchestrate, and otherwise enable HolaBelle and Defendant Yang to manufacture, distribute, offer for sale, and sell the Infringing Products in a blatant, illicit, and illegal contravention of Defendant Glonek's fiduciary duty to TLLC, as well as prevailing law.

71.     Upon information and belief, Defendant Glonek has illicitly and unlawfully used

the valuable TLLC Confidential Information to undercut the pricing of TLLC Products and harm TLLC's relationships with its longtime clients in order to maximize sales of the Infringing Products, thereby severely harming the TLLC Products and TLLC's business.

72.     Defendants' use of the Infringing Names, Infringing Packaging, and Infringing Displays on or in connection with the Infringing Products can only result in further harm to TLLC's reputation and goodwill.

73.     Defendants are not and have never been authorized to manufacture, distribute, market, offer for sale, or sell the Infringing Products under or in connection with counterfeit and infringing copies of the TLLC IP or otherwise.

74.     The Infringing Products are not genuine TLLC Products. TLLC did not manufacture, inspect, or package the Infringing Products, and did not approve the Infringing Products for sale and/or distribution.

75.     The Infringing Products, which are offered under and in connection with the Infringing Names, are advertised, promoted, offered for sale, and sold to the same consumers and clients in the same channels of trade by and through which TLLC markets the TLLC Products.

76.     Defendants' actions constitute a direct infringement in violation of the Lanham Act, or such conduct makes Defendants contributorily and/or vicariously liable for the infringement through their assistance and facilitation that resulted in the manufacture, importation, distribution, advertising, offer for sale, and/or sale of the Infringing Products in interstate and intrastate commerce in the United States.

77.     The long-term damage to TLLC's business is impossible to determine at this point. However, unless and until Defendants are stopped, TLLC and the TLLC IP and their associated valuable goodwill will continue to suffer irreparable harm.

## COUNT ONE

## FEDERAL TRADEMARK COUNTERFEITING and INFRINGEMENT (15 U.S.C. § 1114)

### (as against all Defendants)

78.     TLLC repeats and realleges the allegations of paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     The TLLC Marks and the goodwill of the businesses associated with them in the United States and throughout the World are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public's mind with products and goods of the very highest quality and reputation finding their source in TLLC.

80.     Without TLLC's authorization or consent, and having knowledge of TLLC's well-known and prior rights in and to the TLLC Marks, Defendants have promoted, distributed, offered for sale, and/or sold the Infringing Products under and in connection with the Infringing Names to the consuming public in direct competition with TLLC's use of the TLLC Marks, in or affecting interstate commerce.

81.     Defendants' Infringing Products appear to an ordinary consumer identical to or substantially indistinguishable from the TLLC Products.

82.     Defendants' use of copies or simulations of the TLLC Marks is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by TLLC all to the damage and detriment of TLLC's reputation, goodwill and sales.

83.     TLLC has no control over the quality of Defendants' infringing and counterfeit

merchandise. Because of the high likelihood of confusion as to the source of Defendants' Infringing Products, TLLC's reputation and valuable goodwill in the TLLC Marks are at the mercy of Defendants' willful and unscrupulous tactics.

84.     TLLC has been and continues to be damaged by Defendants' manufacture, distribution, marketing, offering for sale and/or sale of the Infringing Products.

85.     TLLC has no adequate remedy at law and, if Defendants' activities are not immediately enjoined, TLLC will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

## TRADE DRESS INFRINGEMENT
## (15 U.S.C. § 1114)

### (as against all Defendants)

86.     TLLC repeats and realleges the allegations of paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The TLLC Trade Dress is highly distinctive and arbitrary, and has become universally associated in the public mind with products and services of the very highest quality and reputation finding their source in TLLC.

88.     The TLLC Trade Dress in the TLLC Products, TLLC Packaging, and TLLC Display is inherently distinctive.

89.     The TLLC Trade Dress has acquired secondary meaning in the marketplace in that consumers associate the TLLC Trade Dress with a single source of origin, and they are likely to make the same association when the same TLLC Trade Dress is used on another manufacturer's products, packaging, and displays.

90.     The TLLC Trade Dress is non-functional.

91.     The TLLC Trade Dress and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.

92.     Defendants intentionally copied the TLLC Trade Dress of the TLLC Products, TLLC Packaging, and TLLC Displays.

93.     Defendants' manufacturing, advertising, distribution, offering for sale, and/or selling of the Infringing Products that rely upon and use confusingly similar product packaging and displays to the TLLC Trade Dress are likely to cause confusion on the part of consumers and potential consumers, in violation of the Lanham Act § 32(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

94.     Defendants' manufacturing, advertising, distribution, marketing, offering for sale, and/or sale of the Infringing Products have and continue to result in irreparable harm and injury to TLLC. Among other harms, these acts deprive TLLC of their absolute right to determine the manner in which their image is presented to the general public through merchandising; deceive the public as to the origin and sponsorship of the Infringing Products; wrongfully trade upon TLLC's reputation and exclusive rights to the TLLC Trade Dress; harm TLLC's sales of TLLC Products; illicitly divert, usurp, and steal business opportunities properly belonging to TLLC;  and, to the extent that the Infringing Products are of inferior quality, lessen consumers' perception of the quality of all genuine TLLC Products.

95.     Injury to TLLC's goodwill and reputation, and Defendants' infringement will continue unless enjoined by this Court, as TLLC lacks an adequate remedy at law.

## COUNT THREE

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

(as against all Defendants)

96.     TLLC repeats and realleges the allegations of paragraphs 1 through 95 of this

Complaint as if fully set forth herein.

97.     The Infringing Products offered for sale and sold by Defendants are of the same general nature and type as the genuine TLLC Products offered for sale and sold by TLLC and, as such, Defendants' use of the TLLC IP is likely to cause confusion to the general purchasing public.

98.     By misappropriating and using the TLLC IP, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Products and create a likelihood of confusion to ultimate purchasers as to both the source and sponsorship of such goods.

99.     Defendants' unlawful, unauthorized, and unlicensed promotion, distribution, offering for sale, and/or sale of the Infringing Products create express and implied misrepresentations that the Infringing Products were created, authorized, or approved by TLLC, all to Defendants' profit and TLLC's great damage and injury.

100.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the TLLC IP, on and in connection with their Infringing Products, in interstate, intrastate, and international commerce constitutes a false designation of origin and unfair competition throughout the United States, in the State of Connecticut and in this Judicial District.

101.    TLLC has no adequate remedy at law and, if the Defendants' activities are not enjoined immediately, TLLC will continue to suffer irreparable harm and injury to its business, goodwill and reputation.

## COUNT FOUR

## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(C))

### (as against all Defendants)

102.    TLLC repeats and realleges the allegations of paragraphs 1 through 101 of this

Complaint as if fully set forth herein.

103.    The TLLC Marks are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been famous marks long prior to Defendants' conduct as alleged herein.

104.    Defendants' promotion, distribution, offer for sale, and/or sale in commerce of the Infringing Products dilute the distinctive quality of the TLLC Marks, and was done with the willful intent to trade on TLLC's reputation and/or to cause dilution of the TLLC Marks.

105.    Defendants' unauthorized use of the TLLC Marks on or in connection with the Infringing Products was done with notice and full knowledge that such promotion, distribution, offer for sale, and/or sale was not authorized or licensed by TLLC.

106.    Defendants' aforesaid acts are in knowing and willful violation of TLLC's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

107.    TLLC has no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to TLLC's goodwill and reputation.

108.    As a result of Defendants' activities, TLLC has been damaged in an amount to be ascertained, but no less than $1,000,000.00.

**COUNT FIVE**
**FEDERAL COPYRIGHT INFRINGEMENT**
**(17 U.S.C. §§ 501, *et seq.*)**

(as against all Defendants)

109.    TLLC repeats and realleges the allegations of paragraphs 1 through 108 of this Complaint as if fully set forth herein.

110.    Without TLLC's authorization or consent and despite having knowledge of TLLC's well-known and prior rights in and to the TLLC Copyrights, Defendants have infringed TLLC's federal and common law copyrights in and to the TLLC Copyrights through their manufacture,

distribution, marketing, offering for sale, and/or sale of the Infringing Products.

111.    Defendants' infringement of the TLLC Copyrights has deprived TLLC of the opportunity to receive compensation for its efforts in creating and commercializing the TLLC Copyrights for the full and unfettered enjoyment of the goodwill that continues to grow as a result of TLLC's tremendous commitment of time and resources to the development, maintenance, and regulation of the valuable TLLC Copyrights.

112.    TLLC has no adequate remedy at law and if Defendants' infringing activities are not enjoined, TLLC will continue to suffer irreparable harm and injury to its goodwill and reputation, and to sustain lost profits.

## COUNT SIX

## COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

### (as against all Defendants)

113.    TLLC repeats and realleges the allegations of paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114.    TLLC has built up valuable goodwill in the TLLC Marks and Tradename.

115.    With full knowledge of the fame of the TLLC Marks and Tradename, Defendants trade on the goodwill associated with the TLLC Marks and Tradename, and mislead the public into assuming a connection between the Infringing Products and TLLC.

116.    Defendants' unauthorized use of the TLLC Marks and Trade Name on and in connection with their manufacture, distribution, marketing, offering for sale, and/or sale of the Infringing Products is likely to and does permit Defendants to pass off the Infringing Products to the general public as those of TLLC, all to the detriment of TLLC and the unjust enrichment of Defendants.

117.     Defendants' acts of trademark and tradename infringement have caused and continue to cause confusion and to mislead and deceive the public as to the source of Defendants' Infringing Products, permit Defendants to pass off the Infringing Products as the TLLC Products, and falsely suggests a connection between Defendants and TLLC and will continue to do so, in violation of the common law of the State of Connecticut.

118.     Defendants' acts of trademark and/or trade name infringement have caused and will continue to cause TLLC irreparable harm unless restrained by this Court.  TLLC has no adequate remedy at law.

## COUNT SEVEN

### UNFAIR TRADE PRACTICES AND UNLAWFUL DECEPTIVE ACTS AND PRACTICES (C.G.S.A. § 42-110b(a))

(as against all Defendants)

119.     TLLC repeats and realleges the allegations of paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.     Defendants, without TLLC's authorization or consent, and having knowledge of TLLC's well-known and prior rights in the TLLC IP and the fact that Defendants' Infringing Products are confusingly similar to and rely upon unauthorized copies of the TLLC IP, have marketed, distributed, offered for sale, and/or sold Infringing Products to the consuming public in direct competition with TLLC's sale of the genuine TLLC Products.

121.     The aforesaid acts of Defendants constitute unfair methods of competition and unfair practices in the conduct of commerce and are likely to cause injury to TLLC's intellectual property, business reputation, the TLLC Marks and other valuable goodwill associated with the TLLC IP at no cost to Defendants, and in violation of Connecticut's Unfair Trade Practices Act,

Connecticut General Statute § 42-110b(a).

122.    The conduct of Defendants has injured TLLC and TLLC has suffered damages in an amount that cannot yet be readily ascertained.

## COUNT EIGHT

## COMMON LAW UNFAIR COMPETITION UNDER THE LAWS OF THE STATE OF CONNECTICUT

### (as against all Defendants)

123.    TLLC repeats and realleges the allegations of paragraphs 1 through 122 of this Complaint as if fully set forth herein.

124.    TLLC has built up valuable goodwill in the TLLC IP and the distinctive genuine TLLC Products, TLLC Packaging and TLLC Display.

125.    The aforesaid acts of Defendants constitute misappropriation of labor, intellectual property, business reputation, the TLLC IP and other valuable goodwill associated therewith, at no cost to Defendants, and result in Defendants unfairly benefiting from the same, all in violation of the common law of the State of Connecticut.

126.    Defendants' unauthorized use of the TLLC IP has caused and is likely to continue to cause TLLC damage by tarnishing the valuable reputation and image associated with TLLC and the genuine TLLC Products. Defendants have further palmed off the Infringing Products as genuine TLLC Products by Defendants' false labeling, copying, and misrepresentations to the consuming public, members of whom are likely to and actually do believe the Infringing Products emanate from, are endorsed by, or are associated with TLLC.

127.    The acts of Defendants permit and accomplish confusion, mislead, dupe, and deceive the public as to the source of the Infringing Products, permit and accomplish palming off of the Infringing Products as those of TLLC's, and falsely suggest a connection with TLLC.  These

acts constitute unfair competition with TLLC in violation of the laws of the State of Connecticut.

128.    Defendants' acts have caused and will continue to cause TLLC irreparable harm to its business, the TLLC IP, reputation, intellectual property, and the goodwill associated therewith unless enjoined by this Court.

129.    TLLC has no adequate remedy at law.

## COUNT NINE

### COMMON LAW UNJUST ENRICHMENT UNDER THE LAWS OF THE STATE OF CONNECTICUT

#### (as against all Defendants)

130.    TLLC repeats and realleges the allegations of paragraphs 1 through 129 of this Complaint as if fully set forth herein.

131.    TLLC has built up valuable goodwill in and to the TLLC Marks and the distinctive appearance of the TLLC Products, TLLC Packaging and TLLC Display. Defendants' use of the TLLC IP, TLLC Packaging and TLLC Display are likely to and does permit Defendants to palm off the Infringing Products as those of TLLC, all to the detriment of TLLC and the unjust enrichment of Defendants.

132.    The aforesaid acts of Defendants constitute misappropriation of labor, intellectual property, business reputation, the TLLC IP and other valuable goodwill associated therewith, at no cost to Defendants, and result in Defendants unfairly benefiting from the same, in violation of the common law of the State of Connecticut.

133.    Defendants' unauthorized use of the TLLC IP has caused and is likely to continue to cause TLLC damage by tarnishing the valuable reputation and image associated with TLLC and the genuine TLLC Products. Defendants have further palmed off the Infringing Products as genuine TLLC Products by Defendants' false labeling and misrepresentations to the consuming

public, members of whom are likely to and do believe the Infringing Products emanate from, are endorsed by, or are associated with TLLC.

134.    The aforesaid acts of Defendants are unjustly enriching Defendants. Additionally, the acts of Defendants permit and accomplish confusion, mislead, dupe, and deceive the public as to the source of the Infringing Products, permit and accomplish palming off of the Infringing Products as those of TLLC and falsely suggest a connection with TLLC.  These acts constitute unfair competition with TLLC in violation of the laws of the State of Connecticut.

135.    The conduct of Defendants has caused and continue to cause irreparable injury to TLLC.

136.    TLLC has been damaged and continues to be damaged as a result of the foregoing actions of Defendants in an amount that cannot yet be determined.

## COUNT TEN

## CONVERSION

### (as against all Defendants)

137.    TLLC repeats and realleges paragraphs 1 through 136 of this Complaint as if fully set forth herein.

138.    Defendants have used, and continue to use, the TLLC IP on and in connection with the manufacture, marketing, distribution, offer for sale, and/or sale of the Infringing Products and have pirated the TLLC IP and the valuable goodwill associated therewith and thereby converted the TLLC IP and associated goodwill to their use.

139.    The conduct of Defendants has caused and continues to cause irreparable injury to TLLC.

140.    TLLC has been damaged, and continues to be damaged, as a result of the foregoing

actions of Defendants in an amount that cannot yet be determined.

## COUNT ELEVEN

### TRADE SECRET THEFT
### (18 U.S.C. §§ 1836, *et seq.*)

(as against Defendant Glonek)

141.    TLLC repeats and realleges the allegations of paragraphs 1 through 140 of this Complaint as if fully set forth herein.

142.    TLLC owns valuable trade secrets and takes great measures to prevent its competitors and others from obtaining its trade secrets.

143.    The TLLC Confidential Information constitutes a trade secret within the meaning of the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. §§ 1836, *et seq.*

144.    Defendant Glonek had regular access to and knowledge of the TLLC Confidential Information by and through his nearly decadelong employment with TLLC between 2009 and 2018.

145.    Upon information and belief, Defendant Glonek misappropriated the TLLC Confidential Information by unlawfully obtaining, using, and disclosing such confidential information without TLLC's consent or authorization to design, create, manufacture, distribute, facilitate, and/or sell the Infringing Products to longtime customers of TLLC at diminished prices.

146.    Defendant Glonek's misappropriation of the TLLC Confidential Information has allowed Defendant Glonek to unfairly benefit by using the TLLC Confidential Information to create, market, distribute, offer for sale, and/or sell the Infringing Products.

147.    Defendant Glonek's conduct constitutes a violation of the DTSA.

148.    As a direct and proximate consequence of Defendant Glonek's illicit and illegal conduct, TLLC has suffered and will continue to suffer severe and irreparable damages, including

monetary damages and other harm for which TLLC does not have an adequate remedy at law.

149.    The aforementioned acts by Defendant Glonek in wrongfully misappropriating the valuable TLLC Confidential Information were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by the DTSA and an award of reasonable attorneys' fees and costs of this action, as also provided by the DTSA.

## COUNT TWELVE

## BREACH OF FIDUCIARY DUTY

### (as against Defendant Glonek)

150.    TLLC repeats and realleges the allegations of paragraphs 1 through 149 of this Complaint as if fully set forth herein.

151.    Defendant Glonek owed a fiduciary duty to TLLC stemming from Defendant Glonek's nearly ten (10) years of employment at TLLC, during which time Defendant Glonek was employed as a National Account Manager and made privy to the TLLC Confidential Information in order to facilitate his performance of work therefor, as well as sensitive information relating to, *inter alia*, TLLC's litigation strategy in connection with Civil Action No. 3:15-cv-1606, as evidenced by the Glonek Declaration.

152.    Defendant Glonek's fiduciary duty to TLLC continued after TLLC's termination of its employment relationship with Defendant Glonek.

153.    As part of that fiduciary duty, Defendant Glonek owed a duty to TLLC of good faith and loyalty to, *inter alia*, not exploit, misappropriate, or otherwise utilize the TLLC Confidential Information, including proprietary customer lists and pricing information, not divert business in which TLLC had a tangible expectancy, not solicit TLLC's former and longtime customers, and  not undercut TLLC's pricing of its genuine TLLC Products to sell the Infringing

Products through Defendant Glonek's knowledge of the TLLC Confidential Information.

154.     Defendant Glonek breached his fiduciary duty to TLLC by facilitating, aiding, orchestrating, and otherwise using the TLLC Confidential Information to enable HolaBelle and Defendant Yang to solicit TLLC's former customers and to undercut TLLC's pricing for its genuine TLLC Products and thereby divert business opportunities to HolaBelle, Defendant Yang, and Defendant Glonek that should rightfully have accrued to TLLC.

155.     As a direct and proximate consequence of Defendant Glonek's illicit and illegal conduct, TLLC has suffered and will continue to suffer severe and irreparable damages, including monetary damages and other harm for which TLLC does not have an adequate remedy at law.

## COUNT THIRTEEN

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### (as against HolaBelle, Defendant Yang, and Defendant Glonek)

156.     TLLC repeats and realleges the allegations of paragraphs 1 through 155 of this Complaint as if fully set forth herein.

157.     A longstanding business relationship existed between TLLC and, among others, Stop & Shop, whereby TLLC sold more than $300,000.00 worth of TLLC Products to Stop & Shop over the last twenty-five (25) years.

158.     Defendant Glonek had actual knowledge of the business relationship between TLLC and, among others, Stop & Shop by virtue of his nearly decadelong employment with TLLC in the capacity of National Account Manager.

159.     Upon information and belief, HolaBelle and Defendant Yang also had actual knowledge of the business relationship between TLLC and, among others, Stop & Shop, through their business affiliation with Defendant Glonek.

160.    Upon information and belief, HolaBelle, Defendant Glonek, and Defendant Yang intentionally interfered with the business relationship between, among others, Stop & Shop by, *inter alia*, purposefully undercutting the pricing of the TLLC Products through Defendant Glonek's improper use and exploitation of the TLLC Confidential Information.

161.    HolaBelle, Defendant Glonek, and Defendant Yang's interference was wrongful and tortious.

162.    As a result of the interference of HolaBelle, Defendant Glonek, and Defendant Yang, TLLC suffered severe and irreparable damage since (1) Stop & Shop recently apprised TLLC that it would be terminating its longstanding business relationship with TLLC in favor of fulfilling its wooden roasting stick needs by and through the Infringing Products offered for sale and sold by HolaBelle, Defendant Glonek, and Defendant Yang, and (2) various markets, stores, grocers, and other entities have engaged in the offering for sale and sale of the Infringing Products, which are directly competitive to the genuine TLLC Products and which have harmed TLLC's sales of the same.

163.    TLLC has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, TLLC respectfully requests judgment against Defendants and their respective partners, agents, and employees, and any and all persons in active concert or participation with Defendants, and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently enjoined:

    (a)    from using in any manner the TLLC IP, alone or in combination with any word or words which so resemble each said trademarks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product or service not TLLC's, or not authorized by TLLC to be sold in connection with each of the TLLC IP;

    (b)    from passing off, inducing, or enabling others to sell or pass off any product or service as and for products or services produced by TLLC that are not TLLC's, or not produced or rendered under the control and supervision of TLLC and approved by TLLC for sale under the TLLC Marks;

    (c)    from committing any acts calculated to cause purchasers to believe that Defendants' products or services are those sold under the control and supervision of TLLC, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of TLLC;

    (d)    from further diluting and infringing all TLLC Marks, the TLLC Copyrights, the TLLC Trade Dress, and other intellectual property and damaging TLLC's goodwill;

    (e)    from misappropriating and exploiting the TLLC Confidential Information in an effort to gain an unfair competitive advantage;

    (f)    from otherwise competing unfairly with TLLC in any manner; and

    (g)    from delivering, distributing, returning or otherwise disposing of, in any manner, products or services not approved by or for TLLC, nor authorized by TLLC to be sold or offered for sale, and which bear or otherwise incorporate or rely upon any or all of the TLLC IP.

2. That Defendants be required upon service of this Complaint to immediately deliver up to TLLC any copies, or originals for copy, of any and all Infringing Products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of Defendants or under their control bearing any of the TLLC IP, or each of them, alone or in combination with any other words, or used in

connection with the advertising, offering for sale, or sale of products or services not TLLC's, or not made under the authorization and control of TLLC.

3. That Defendants be required upon service of this Complaint to immediately supply TLLC with a complete list of entities from whom they purchased and to whom they distributed, sold, and/or attempted in any way to distribute or sell products or services falsely bearing, featuring, or incorporating the TLLC Marks, the TLLC Copyrights, the TLLC Trade Dress, or products not authorized by TLLC to be sold in connection with each of the foregoing classes of intellectual property, as well as the identities of all persons and entities that facilitated, orchestrated, conducted, contributed to, assisted with, or oversaw the manufacture, importation, and transportation of the Infringing Products.

4. That Defendants be required upon service of this Complaint to immediately deliver up for destruction their entire inventory of the Infringing Products bearing any of the Infringing Names.

5. That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon TLLC a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1 to 4 hereof.

6. That Defendants account for and pay over to TLLC profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and, that the amount of damages for infringement of the TLLC registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

7. That TLLC be awarded actual damages of $2,000,000.00 and punitive damages in the amount of $1,000,000.00, as well as treble damages for Defendants' willful conduct.

8. TLLC be awarded statutory damages in the amount of $4,000,000.00 for Defendants'

willful counterfeiting of the TLLC Marks.

9.  That TLLC be awarded reasonable attorney's fees and have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act or C.G.S.A. §§ 42-110a, *et seq.*, 42-110b, *et seq.*

10.   That TLLC be awarded damages and profits adequate to compensate TLLC for Defendants' infringement of the TLLC Copyrights, together with prejudgment and post-judgment interest, pursuant to 17 U.S.C. § 504(b); or, in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $450,000.00 for Defendants' willful counterfeiting of the TLLC Copyrights; and full costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

11.   That Defendants pay exemplary or punitive damages to TLLC due to Defendants' willful and intentional acts in violation of TLLC's rights and Defendants' false representations to and deception of the public to foster the belief that the Infringing Products are those of TLLC.

12.   Such other and further relief as the Court deems to be reasonable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b), TLLC hereby demands a jury trial on all issues so triable that are raised by this Complaint. Respectfully submitted,

Dated:  December 1, 2023

GILBRIDE, TUSA, LAST & SPELLANE LLC

By: _____
Todd S. Sharinn, Esq.
Gilbride, Tusa, Last & Spellane LLC
986 Bedford Street
Stamford, CT 06905
Telephone: (203) 542-8418
Facsimile: (203) 622-9392
tss@gtlslaw.com

*Attorneys for Plaintiff*
  *THIS, LLC*