**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THIS, LLC, | ) | 3:23-CV-1579 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLABELLE, INC., *et al.*, | ) | |
| *Defendants*. | ) | June 12, 2024 |

## ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICITON AND IMPROPER VENUE

Sarala V. Nagala, United States District Judge.

In this intellectual property dispute, Plaintiff This, LLC, ("TLLC") accuses one of its manufacturing competitors and various grocery stores of infringing the trademarks and copyrights it holds in its Smorstix brand of marshmallow roasting sticks. Defendant HolaBelle Inc., which operates in California, manufactures and sells the allegedly infringing product: the Mallosticks brand of marshmallow roasting sticks. HolaBelle and individual Defendants Ya Lan Yang and Todd Glonek have moved to dismiss this action for lack of personal jurisdiction and improper venue.[1]

For the reasons that follow, the Court DENIES the HolaBelle Defendants' motion to dismiss without prejudice to renewal after a period of limited jurisdictional discovery.

## I.      PROCEDURAL BACKGROUND

The Court provides only the procedural background necessary for understanding the HolaBelle Defendants' motion to dismiss.

TLLC initially sued the HolaBelle Defendants, as well as The Stop & Shop Supermarket Company, LLC, Ahold Delhaize USA, Inc. (Stop & Shop's parent company), and other grocery

---

[1] The Court refers to HolaBelle Inc., Yang, and Glonek collectively as the "HolaBelle Defendants."

store chains[2] for federal trademark violations, copyright infringement, federal trade secret theft, and various violations of Connecticut state law.  Compl., ECF No. 1.  TLLC contends that the HolaBelle Defendants have copied its trade dress, packaging, and displays for Smorstix when manufacturing and selling Mallosticks, which has caused consumer confusion between the brands, and that the Grocery Store Defendants violated its intellectual property and state law rights by selling the allegedly-infringing Mallosticks.  *E.g., id.* ¶¶ 48, 56, 58.

After an initial round of briefing on the HolaBelle Defendants' motion to dismiss for lack of personal jurisdiction and improper venue, the Court scheduled a hearing on the motion for February 23, 2024.  On February 2, 2024, TLLC filed an Amended Complaint as a matter of course, and voluntarily dismissed several of the Grocery Store Defendants.  ECF Nos. 85, 86. Because the Amended Complaint did not alter the substance of TLLC's allegations against the HolaBelle Defendants, the HolaBelle Defendants elected to apply the arguments made in their motion to dismiss the original complaint to the Amended Complaint.  ECF No. 91.  The motion argued that exercising personal jurisdiction over the HolaBelle Defendants would violate due process because HolaBelle had "sold the alleged Infringing Mallosticks only to Albertson [a grocery store chain] in California," ECF No. 19 at 15, and that the District of Connecticut was an improper venue for this suit.  A central unresolved question in the briefing was whether Mallosticks had ever been sold in Connecticut.

About an hour-and-a-half before the February 23, 2024, motion hearing, TLLC filed a joint stipulation with Defendant The Stop & Shop Supermarket Company LLC ("Stop & Shop") providing, in part, that Stop & Shop's purchasing affiliate had purchased Mallosticks from a company named Heritage, which "were offered for sale and were sold as-is in some of Stop &

---

[2] The Court refers to the grocery store chains collectively as the "Grocery Store Defendants."

Shop's retail stores in Connecticut in the past."  Joint Stip., ECF No. 93 ¶ 5.  The Court ordered supplemental briefing from the HolaBelle Defendants and TLLC in light of TLLC's eleventh-hour submission, and has received those briefs as well as unsolicited evidentiary objections and responses to those evidentiary objections.  *See* ECF Nos. 107 (HolaBelle Defendants' supplement), 109 (TLLC's supplement), 110 (TLLC's affidavit in support), 111 (HolaBelle Defendants' evidentiary objections), 112 (TLLC's responses to evidentiary objections).  The motion is now fully briefed.

## II.     MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction made under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  While a plaintiff has the "ultimate burden of establishing jurisdiction over [a] defendant by a preponderance of the evidence, until an evidentiary hearing is held, [the plaintiff] need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists."  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal citation omitted).  The pleadings and affidavits are construed in the light most favorable to the plaintiff and "all doubts are resolved in its favor."  *Id.*

Importantly, however, a plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Finally, while the Court construes all pleadings and affidavits in the light most favorable to Plaintiff, it must not "draw argumentative inferences in the plaintiff's favor." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

In deciding a pretrial motion to dismiss for lack of personal jurisdiction, "a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  It can "determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.*  If a plaintiff has not made a *prima facie* showing of personal jurisdiction, a court can order discovery, "in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014).

### III.    RELEVANT FACTS

#### A.  HolaBelle and the Individual Defendants

Defendant Yang, HolaBelle's chief executive officer, attests to the following facts in support of the motion to dismiss.  Yang Decl. In Supp. HolaBelle Defs.' Mot. Dis., ECF No. 19-2, ¶¶ 2–3.  Yang is a resident of California who has not engaged in business or other activities in Connecticut.  *Id.* ¶¶ 1, 22–25.  HolaBelle is a corporation organized under the laws of the State of California with a principal place of business in California.  *Id.* ¶ 5.  HolaBelle is neither registered nor licensed to do business in Connecticut, and neither owns nor leases property in Connecticut.  *Id.* ¶¶ 6, 13–14.  No employees of HolaBelle have ever traveled to Connecticut, and HolaBelle

does not direct marketing or advertising to Connecticut.  *Id.* ¶¶ 12, 15.  According to Yang, HolaBelle "sells the alleged Infringing Mallosticks only to Albertson Companies . . . here in California," and "has never sold the Infringing Mallosticks to anyone in Connecticut."  *Id.* ¶¶ 17, 19.

Glonek, an independent contractor who provides services to HolaBelle, attests he has resided in California since 1983.  Glonek Decl., ECF No. 19-3 ¶¶ 2, 6.  He previously worked as an independent contractor for TLLC between 2009 and 2015, while residing in California.  *Id.* ¶ 7.  Glonek attests he has not engaged in business or other activities in Connecticut.  *Id.* ¶¶ 7–11.

### B.  HolaBelle's Website

HolaBelle maintains a website to promote and sell its products, though Yang attests that Mallosticks are not available for purchase through this "basic website."  Yang Decl. ¶ 20.  TLLC has provided a screenshot of the HolaBelle website, which promotes Mallosticks.  ECF No. 68-1 at 45–46.  However, the screenshots neither display an associated price for purchasing Mallosticks, nor offer an option for purchasing the products directly through the website.  *See id.*  Further, the website does not indicate on the "About Us" page how customers should best get in contact with HolaBelle for purchasing.  *Id.* at 48.

TLLC has also included screenshots from the website of KooKooDoo Fun Play Inc., which Plaintiff asserts is an affiliate of HolaBelle.  ECF No. 109 at 12 n.8; ECF No. 110 at 27–33.  While this website does not promote Mallosticks or offer them for sale, the "About Us" section of the website invites users to email KooKooDoo for a sales quote.  ECF No. 110 at 32.

### C.  Shipments of Mallosticks

The parties focus significant attention on the facts surrounding a shipment of Mallosticks by HolaBelle to non-party Heritage Group, LLC ("Heritage") and Encore Associates ("Encore")

in 2022.  Heritage is a California-based wholesale broker that assists its customers with obtaining products.  Decl. of Jui Jen Chang In Supp. Pl.'s Supp. Br., ECF No. 109-1 ¶¶ 2, 5; Decl. of Venita James In Supp. Stop & Shop's Opp. to Pl.'s Mot. Prelim. Inj., ECF No. 65-1 ¶ 4.  Encore is a distributor that works with Heritage.[3]  *See* ECF No. 68 at 7.

Between December 2021 and January 2022, HolaBelle arranged with Heritage and Encore to ship hundreds of cases of Mallosticks to a warehouse operated by non-party and former Defendant, Ahold Delhaize USA, Inc. ("Ahold").[4]  ECF No. 68-1 at 129–94.  This is the only actual sale and delivery of Mallosticks by HolaBelle to Heritage.  *See* Chang Decl. ¶¶ 9, 14.  The correspondence in the record demonstrates the following facts about this transaction.

On December 21, 2021, HolaBelle reached out to Heritage and Encore regarding two purchase orders made by Heritage on behalf of Ahold; Heritage's Vice President of Operations attests the Mallosticks that were purchased were intended for resale by Ahold's various subsidiary grocery stores, including Stop & Shop.  Chang Decl. ¶ 9.  According to HolaBelle's invoices, the sale was made by HolaBelle's sales agent, RKO Sales.  ECF No. 68-1 at 123–24, 201.  The unit price and total amount of the invoices are redacted from the version of the invoices submitted by TLLC.  ECF No. 68-1 at 123–24.  It is unclear when the purchase orders were made, within what context RKO Sales made the sales to Heritage and Encore, or how the orders were otherwise facilitated.

Following the purchase, HolaBelle emailed ADUSA—Ahold's supply chain procurement company, *see* ECF No. 68-1 at 167, ECF No. 110 at 44—to set up delivery of the Mallosticks to a

---

[3] Neither party has described Encore's business model nor the relationship between Heritage and Encore in any detail.
[4] Ahold is a member of the Ahold Delhaize corporate family, whose ultimate parent is the Dutch corporation Koninklijke Ahold Delhaize N.V.  Ahold Mot. Dismiss, ECF No. 64 at 9.  Ahold's corporate family includes the following grocery store chains:  Food Lion, Giant Food, The GIANT Company, Hannaford, and Stop & Shop.  ECF No. 110 at 44.

warehouse in Manchester, Connecticut on January 10, 2022. ECF No. 68-1 at 194. After a series of emails between HolaBelle, Heritage, Encore, and ADUSA discussing shipping priorities and warehouse availability, HolaBelle agreed to a new delivery date of January 25, 2022. *Id.* at 185. On January 24, 2022, a day before the scheduled delivery to the ADUSA warehouse in Connecticut, Encore instructed HolaBelle to redirect the delivery to an ADUSA-operated warehouse in Hatfield, Massachusetts. *Id.* at 178. As Encore explained, HolaBelle's delivery drivers would be unable to deliver to the Connecticut warehouse, even if they showed up to the scheduled delivery date on time. *Id.* at 130.

The products ultimately were delivered to the Massachusetts warehouse on January 26, 2022, *id.* at 175, and it appears HolaBelle invoiced Heritage $62,736 for the items, ECF No. 107-5 at 2.[5] Heritage paid the invoice. Chang Decl. ¶ 13. While Encore described the switch to the Massachusetts warehouse as a "temporary" move, ECF No. 68-1 at 178, there is no indication ADUSA ever redistributed the Mallosticks to the Connecticut warehouse at any point.

Sometime in 2022, Peapod Digital Labs, LLC ("PDL"), arranged for the purchase of Mallosticks from Heritage for sale at Stop & Shop. James Decl. ¶ 4. PDL is an affiliate of Stop & Shop—and a subsidiary of Ahold—that sources seasonal merchandise for Stop & Shop stores. *Id.* ¶ 3.[6] Stop & Shop operates 89 stores in Connecticut, 125 stores in Massachusetts, 57 stores in New Jersey, 100 stores in New York, and 27 stores in Rhode Island. *See* ECF No. 68-1 at 16 (Stop & Shop website printout showing number of locations by state).

The total wholesale cost of the Mallosticks Stop & Shop acquired was $5,875.20. James

---

[5] A spreadsheet representing all Mallosticks sales made by HolaBelle between 2020 and 2023 shows that these were the only two sales to Heritage; the remaining $292,908.48 in Mallosticks sales in these years were made to Albertsons. ECF No. 107-5 at 2.
[6] According to a Supermarket News article provided by Plaintiff, Stop & Shop integrated with PDL in 2020. ECF No. 110 at 46–47.

Decl. ¶ 5.  PDL made this purchase on behalf of Stop & Shop solely through Heritage, and neither Stop & Shop nor PDL ever contacted any of the HolaBelle Defendants regarding the purchase.  *Id.* ¶ 6.  At the same time that PDL arranged for the purchase of Mallosticks from Heritage, it also arranged for the purchase of TLLC's Smorstix from Heritage.  *Id.* ¶ 9.

At some point thereafter, at some undisclosed time, some undisclosed amount of Mallosticks purchased by PDL made their way into Stop & Shop stores in Connecticut, where they were offered for sale to grocery store customers.  *See* Joint Stip., ECF No. 93 ¶ 5.

In 2023, Heritage received five new customer orders for Mallosticks for the summer 2024 season, which purchased approximately 300,000 units to be delivered to a warehouse in Manchester, Connecticut.  Chang Decl. ¶ 14.  After receipt of a cease-and-desist letter from TLLC in December of 2023, Heritage canceled these orders, and the sales never occurred.  *Id.* ¶¶ 15–17.

## IV.    PERSONAL JURISDICTION DISCUSSION

An analysis of personal jurisdiction requires two steps:  first, the Court must determine whether Connecticut's long-arm statute supports the exercise of personal jurisdiction over the foreign defendant; second, the Court must determine whether such exercise of personal jurisdiction comports with the due process principles set forth in the United States Constitution.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

The HolaBelle Defendants' motion argues only that the Court's exercise of jurisdiction over them would violate principles of due process.  ECF No. 19.  Plaintiff, recognizing that the HolaBelle Defendants had not discussed whether jurisdiction would be proper under Connecticut's long-arm statutes, correctly addressed that issue in its response.  ECF No. 68 at 13–24.  The HolaBelle Defendants did not meaningfully contest that the long-arm statutes are satisfied in their reply, and so the Court deems this issue conceded.  *See Dangelo v. Client Servs., Inc.*, No. 19-cv-

1915 (SJF) (ARL), 2020 WL5899880, at *4 (E.D.N.Y. June 11, 2020) (collecting cases for the proposition that an issue not briefed is conceded), *report and recommendation adopted*, No. 19-cv-1915 (SJF) (ARL), 2020 WL 4187903 (E.D.N.Y. July 21, 2020).  Thus, the Court addresses only the parties' arguments as to whether personal jurisdiction comports with due process.

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts.  The nonresident generally must have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The due process "analysis has two related components:  the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Chloe*, 616 F.3d at 164.

"With respect to minimum contacts . . . a distinction is made between 'specific' jurisdiction and 'general' jurisdiction."  *Id.*  "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'"  *Id.* (quoting *Helicopteros Nacionales de Colo., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  "A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."  *Chloe*, 616 F.3d at 164.  TLLC asserts only that the Court has specific jurisdiction over the HolaBelle Defendants.

With respect to the reasonableness inquiry, the Court asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).

For the reasons that follow, the Court finds that while TLLC is on its way to making a *prima facie* showing that the Court has personal jurisdiction over the HolaBelle Defendants, it ultimately fails in meeting that burden, as its position requires the Court to make argumentative inferences it is not permitted to make at this juncture.  The Court will, however, permit a period of jurisdictional discovery to allow the parties to further develop the factual record on this issue.

    A.  <u>Minimum Contacts</u>

First, on the present record, the Court cannot conclude that the HolaBelle Defendants have minimum contacts with Connecticut for the Court to exercise personal jurisdiction over them consistent with due process.  Even construing the pleadings and affidavits in the light most favorable to TLLC, the Court cannot find that the HolaBelle Defendants purposefully directed their activities towards Connecticut or could reasonably foresee being haled into a Connecticut court.

    *1.  Legal Standard*

"Where 'the claim arises out of, or relates to, the defendant's contacts with the forum'—*i.e.*, specific jurisdiction—minimum contacts exist 'where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (Sotomayor, J.) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001)).  "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (collecting cases).

Simply placing goods into the stream of commerce, without more, though, "is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif., Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality op.); *accord Chloe*, 616 F.3d at 171. Rather, a plaintiff must allege additional conduct that indicates "an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co. Ltd.*, 480 U.S. at 112. For instance, "a regular course of sales in a particular state or other actions intentionally targeting consumers in that state are likely sufficient." *Armor All/STP Prods. Co. v. TSI Prods., Inc.*, No. 3:17-CV-1131 (MPS), 2018 WL 4158368, at *5 (D. Conn. Aug. 30, 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring)). Ultimately, a court must consider whether a defendant's conduct and contacts with the forum state were such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). The minimum contacts inquiry is a totality of the circumstances test. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).

### 2. Analysis

While there is no longer any doubt that some number of Mallosticks entered Connecticut and were offered for sale by Stop & Shop, there is insufficient evidence of the "something more" demonstrating that the HolaBelle Defendants purposefully availed themselves of Connecticut such that they could reasonably foresee being haled into court here.

As an initial matter, the Court notes that the HolaBelle Defendants cannot escape the Court's personal jurisdiction simply because they dealt solely through a distributor. *See Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 201 (D. Conn. 2015) (finding minimum contacts where out-of-state defendant was sued in connection with in-state sale of products by a

third-party distributor, and "there [wa]s evidence that the defendant attempted to serve the state's market through the distributor"); *OneBeacon Ins. Grp. v. Tylo AB*, 731 F. Supp. 2d 250, 258–60 (D. Conn. 2010) (finding minimum contacts where foreign company sold products through agreement with distributor, with knowledge that distributor would resell them in a region including Connecticut). Thus, the question is whether HolaBelle somehow purposefully availed itself of the Connecticut market, through its sales and distributorship arrangements with RKO Sales and Heritage and/or Encore or otherwise. On the present record, the Court cannot conclude that it did.

First, the communications concerning the location of the 2022 delivery by HolaBelle to the ADUSA warehouse do not demonstrate minimum contacts with Connecticut. While Heritage initially directed HolaBelle to deliver the items in the two purchase orders to an ADUSA warehouse in Connecticut, the orders were rerouted, at the last minute, to Massachusetts. ECF No. 68-1 at 178. Encore then informed HolaBelle that HolaBelle would not be allowed to deliver to Connecticut, even if its trucking company could not successfully reroute in time. *Id.* at 130. While Encore informed HolaBelle that the change to delivery in Massachusetts would be "a temporary one," there is no indication in the record that HolaBelle's product ever in fact moved to the Connecticut warehouse or, more importantly, that the HolaBelle Defendants had the expectation that Mallosticks would ultimately be distributed in Connecticut.

TLLC urges the Court to infer that, even though the delivery was rerouted to Massachusetts, the HolaBelle Defendants would have known that the Mallosticks would make their way back into Connecticut, to be sold at the Stop & Shop locations in Connecticut. The last email HolaBelle received about the delivery was that it would be impossible for the warehouse in Connecticut to accept the delivery. *Id.* at 130. To assume that HolaBelle should have or would have expected further distribution to Connecticut would be an impermissible argumentative

inference on the present record, rather than a permissible resolution of a factual doubt in TLLC's favor.  *See In re Terrorist Attacks*, 714 F.3d at 673; *Robinson*, 21 F.3d at 507.  Without additional evidence relating to the HolaBelle Defendants' expectations about or knowledge of the ultimate sale location of the Mallosticks it sold to Heritage, the fact that the delivery was rerouted from Connecticut does not meet TLLC's *prima facie* burden.  But jurisdictional discovery could provide additional information about the parties' expectations concerning the re-rerouting and whether HolaBelle intended or reasonably should have anticipated that Mallosticks would be sold in Connecticut stores.

The communications between HolaBelle and the distributors concerning the identity of the ultimate buyer, too, do not meet Plaintiff's burden, either alone or in combination with the other evidence in the record.  Based on HolaBelle's invoices and communications with Heritage and Encore, the Court can conclude that HolaBelle understood that it was delivering to a warehouse operated by ADUSA and Ahold.  ECF No. 68-1 at 123–24.  However, that HolaBelle delivered to Ahold does not thereby impute knowledge to HolaBelle as to Ahold's status as Stop & Shop's or PDL's parent company.  As TLLC itself has explained, ADUSA distributes to Food Lion, Giant Food, The GIANT Company, Hannaford, and Stop & Shop.  ECF No. 110 at 44.  There is no evidence before the Court that HolaBelle was aware of Ahold's corporate structure, nor that HolaBelle would have been aware which of Ahold's many subsidiaries would have received the Mallosticks when they were shipped to Ahold's warehouse (much less that any particular subsidiary would sell the products in Connecticut).  In fact, the HolaBelle Defendants have declared that, during the relevant time period, they were not aware of Ahold or Stop & Shop's distribution arrangements and corporate structure.  Yang Supp. Decl., ECF No. 107-2 ¶¶ 5–11; Glonek Supp. Decl. ¶ 10, ECF No. 107-3 ¶¶ 6–12.

Similarly, there is no indication that because two PDL employees were involved in the email chain about HolaBelle's delivery, *e.g.*, ECF No. 68-1 at 143–44, that the HolaBelle Defendants would necessarily have been aware of the sourcing relationship between PDL and Stop & Shop. Plaintiff has provided a copy of an article from a publication called "Supermarket News" discussing Stop & Shop's integration with the Peapod online grocery service. ECF No. 110 at 46–49. A web clipping, however, is not evidence that the HolaBelle Defendants knew that PDL sources on behalf of Stop & Shop, such that the Court could conclude that the HolaBelle Defendants had reason to know their products would ultimately end up at Stop & Shop stores in general, or at such stores in Connecticut specifically. On the present record, the only information Plaintiff has put forth suggesting the HolaBelle Defendants had knowledge of the corporate relationships is the declaration of Heritage's vice president, who states generally that "[i]t is common knowledge in the household goods and foodstuff industries" that Stop & Shop operates in Connecticut and that it is "the local grocery store brand of Ahold." Chang Decl. ¶ 8. This general statement is insufficient to demonstrate that the HolaBelle Defendants had knowledge that the Mallosticks would be sold in Connecticut, particularly as TLLC itself acknowledges that Ahold has many other grocery store subsidiaries. ECF No. 110 at 44. Jurisdictional discovery could provide the additional information necessary to understand the extent to which the HolaBelle Defendants understood Ahold's corporate structure and intended to target sales to Stop & Shop stores and/or Connecticut, generally.

Moreover, to the extent TLLC relies on HolaBelle's website as a mechanism that allows HolaBelle to target buyers in Connecticut, its argument fails. HolaBelle's website is not structured in a manner such that the Court can conclude HolaBelle should have reasonably expected to be haled into any court in the country. Courts in this District draw distinctions between active and

passive websites when assessing personal jurisdiction. *The Cousteau Soc., Inc. v. Cousteau*, 498 F. Supp. 3d 287, 303–04, 306 (D. Conn. 2020).  Active websites are those "where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer." *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 265 (D. Conn. 2001).  On the other hand, "[p]assive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." *Kun Shan Ge Rui Te Tool Co. Ltd. v. Mayhew Steel Prods., Inc.*, 821 F. Supp. 2d 498, 503 (D. Conn. 2010).

As TLLC's own submissions demonstrate, HolaBelle's website merely markets its products on its website and does not allow users to purchase goods.  ECF No. 68-1 at 42–50 (screenshots of HolaBelle's website).  This makes HolaBelle's website "passive" for purposes of analyzing personal jurisdiction and does not support finding that the HolaBelle Defendants could have expected to be haled into Connecticut by virtue of allowing Connecticut users to purchase goods online.[7]

Finally, the other evidence provided by TLLC does not on its own, or in combination with the record described above, demonstrate HolaBelle's minimum contacts with Connecticut.  First, HolaBelle's cancelled contract with Heritage to deliver Mallosticks to Ahold in 2024 does not support a *prima facie* showing of personal jurisdiction on the present record.  The Court lacks sufficient information about that contract from which it can conclude that it evinces an intent by HolaBelle to serve the Connecticut market, through its anticipated sale to Heritage.  *See Flame-*

---

[7] Although the website of HolaBelle's affiliate KooKooDoo Fun Play generically invites users to email the company for a quotation, ECF No. 110 at 32, it likewise only passively advertises various products (not including Mallosticks). *Id.* at 27–31.

*Spray Indus. Inc. v. GTV Auto. GmbH*, 266 F. Supp. 3d 608, 619 (E.D.N.Y. 2017) (explaining that a contract between the parties on its own does not generally establish minimum contacts) (citing *Burger King Corp.*, 471 U.S. at 479).   In evaluating the extent to which a contract confers jurisdiction, courts must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ."  *Burger King Corp.*, 471 U.S. at 479.  TLLC has not briefed these issues, and the Court lacks sufficient information at this juncture to conclude that the cancelled contract confers personal jurisdiction over the HolaBelle Defendants.  It may well be that jurisdictional discovery bears out HolaBelle's intent to have Mallosticks distributed in Connecticut through the cancelled contract.  But because the sale never took place—and no Mallosticks were distributed to Stop & Shop stores in Connecticut in 2024— the Court cannot conclude on the present record that this anticipated contract, either alone or in combination with Plaintiff's other evidence, is sufficient to demonstrate a *prima facie* case that HolaBelle had minimum contacts with Connecticut.

Nor does Defendant Glonek's email with HolaBelle's sales agent concerning sales strategies in May of 2023 demonstrate HolaBelle's intent to target Connecticut. ECF No. 68-1 at 126–27.  Defendant Glonek's communication appears aimed at providing Encore with talking points about why Glonek perceived Mallosticks as the superior product; he does not direct Encore to target Connecticut, or otherwise evince an intent that HolaBelle is doing so.  *Id.*  Rather, he is providing information to Encore about how they may more generally market Mallosticks *anywhere*, to any buyer.  *Id.*  If anything, Defendant Glonek's email indicates HolaBelle's difficulty in distributing in Connecticut up to that point.  *See id.* ("The main issue here, is that Smorstix is based out of Connecticut and that is the message the buyers keep saying is that they want to support a local business.").  Moreover, that Defendant Glonek had a previous business

relationship with TLLC does not establish—without more—that he targeted Connecticut in his promotion of Mallosticks. Jurisdictional discovery could provide greater insight into the extent to which the HolaBelle Defendants intended to target Connecticut in advance of their only known sales in Connecticut in 2022.

Taking TLLC's evidence in its totality, its case for personal jurisdiction is missing key pieces of information that would demonstrate *prima facie* minimum contacts by the HolaBelle Defendants. The cases on which TLLC relies are not to the contrary. For example, in *Armor All*, the court found sufficient minimum contacts based on the combination of the defendant's distribution contract with AutoZone and its "active" website, through which consumers could use a store pickup feature to buy the defendant's products at any of AutoZone's 47 stores in Connecticut. 2018 WL 4158368, at *6. This is unlike HolaBelle's distribution network with Heritage and Encore. Unlike in *Armor All*, where the defendant directly contracted with AutoZone to sell the allegedly infringing products, HolaBelle did not directly contract with Stop & Shop— the relevant point of sale for consumers of Mallosticks—but with Heritage and Encore, wholesale brokers that did not themselves sell directly to consumers. There is therefore at least one additional link in the distribution chain, when compared to *Armor All*. Similarly, in *Evergreen Media*, the court found minimum contacts existed where the defendant had entered into a distribution agreement "in contemplation of the fact" that the defendant's products would be distributed to consumers nationwide, through a national book retailer with stores in Connecticut that sold directly to consumers. 105 F. Supp. 3d at 201. For the reasons the Court has already explained, the evidence proffered by Plaintiff about HolaBelle's intention to target Connecticut is simply too

attenuated, on the present record, to find in its favor.  However, limited jurisdictional discovery as to the issues identified is appropriate.[8]

       B.  <u>Reasonableness</u>

Even if the Court were to find that TLLC had made *a prima facie* showing of the HolaBelle Defendants' minimum contacts with Connecticut, the Court cannot find, at this juncture, that exercising personal jurisdiction over the HolaBelle Defendants is reasonable.

In considering reasonableness, the key question is "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164 (internal quotation marks omitted).  "Courts are to consider five factors in evaluating reasonableness:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels*, 305 F.3d at 129 (quoting *Metro. Life*, 84 F.3d at 568).

Upon application of these factors, the Court cannot presently conclude that exercising personal jurisdiction over the HolaBelle Defendants would be reasonable.  First, the burden will be high on the HolaBelle Defendants if the case proceeds in Connecticut.  HolaBelle, Defendant Glonek, and Defendant Yang are all California citizens and their contracts with Heritage were

---

[8] While the Court has analyzed all the HolaBelle Defendants together, it notes that Plaintiff's arguments for exercising jurisdiction over Yang and Glonek, as individual employees of HolaBelle, are an even farther stretch on the present record.  Plaintiff has put forth no evidence of Yang specifically targeting Connecticut.  Nor are Glonek's communications sufficient, as described above.  Through jurisdictional discovery, however, Plaintiff may be able to uncover additional evidence suggesting that Yang or Glonek themselves had minimum contacts with Connecticut, such that the exercise of personal jurisdiction over them comports with due process.  *See, e.g., Armor All*, 2018 WL 4158368, at *5–6 (imputing acts of a corporate entity to top level employees for purposes of analyzing minimum contacts).

(presumably) made in California.  Second, Connecticut's interest in adjudicating is only slight. Although Plaintiff is a Connecticut citizen, only a small portion of the alleged infringement took place in Connecticut (some unknown amount of the $5,875.20 wholesale of the approximately $355,644.48 in Mallosticks sold between 2020 and 2023).  *See* James Decl. ¶ 5 (noting the wholesale cost for all of the Mallosticks Stop & Shop acquired was $5,875.20); ECF No. 107-5 (listing all Mallosticks sales between 2020 and 2023, totaling $355,644.48).  Third, while Plaintiff would be burdened by litigating in California, either forum would likely provide efficient resolution of the dispute.  Fourth, it is unclear which state has the best interest in adjudication.  The conduct at issue in this case occurred across three states:  California for the distribution contract between HolaBelle and Heritage; Massachusetts, for the delivery of the Mallosticks in 2022 to ADUSA; and Connecticut, where some unknown amount of $5,875.20 worth of Mallosticks purchased by Stop & Shop for resale was offered for sale in Connecticut stores.  Fifth, while Connecticut has an interest in furthering the substantive policies of protecting the trademarks and copyrights of its home corporations, that interest is tempered by the fact that more allegedly infringing conduct may have occurred in other states, specifically California and Massachusetts.

On the present record, while some of the reasonableness factors weigh slightly in Plaintiff's favor, the Court cannot conclude, on the whole, that it would be reasonable for the Court to exercise personal jurisdiction over the HolaBelle Defendants.  Of course, this assessment may change after a period of jurisdictional discovery.

## V.    VENUE

Finally, the Court also finds that Plaintiff has not yet met its burden in establishing that Connecticut is the proper venue for this dispute.

The legal standard for a motion to dismiss for improper venue is generally the same as the standard for a motion to dismiss for lack of personal jurisdiction. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). That is, "[w]hen a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (*per curiam*)). "Absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing that venue is proper." *Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 313 (W.D.N.Y. 2011) (citing *Gulf Ins. Co.*, 417 F.3d at 355). "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *EPA ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

Two venue statutes are at issue here. First, under 28 U.S.C. § 1400(a), civil actions for copyright infringement may be instituted in any district in which a defendant may be found. A defendant can be "found" in any district in which it is subject to personal jurisdiction. *Leroi, Inc. v. Csc3c, Inc.*, No. 5:15-cv-0565 (GTS/DEP), 2016 WL 4997228, at *8 (N.D.N.Y. Sept. 19, 2016)). Because the Court has found that TLLC has not sustained its *prima facie* burden of showing the HolaBelle Defendants are subject to personal jurisdiction in the District of Connecticut, venue is not proper in Connecticut under the copyright venue provision.

The Court thus turns to the general federal venue provision, 28 U.S.C. § 1391(b). Under that statute, venue is proper in a chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial

part" of the events giving rise to the claim occurred in the district; or (3) a defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought."   TLLC asserts venue is proper in Connecticut under § 1391(b)(2), contending that a "substantial part" of the events giving rise to the claim occurred here.

Whether events are substantial "for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005).  The Second Circuit has cautioned that "the adjective 'substantial'" should be taken seriously, and therefore, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Gulf Ins.*, 417 F.3d at 357 (emphasis in original).

For trademark cases, "[t]o demonstrate that a 'substantial part' of the events giving rise to a claim of trademark infringement have occurred in a particular district, the plaintiff can demonstrate either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district."  *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018).  As the Court has already explained, Plaintiff has offered relatively little evidence that demonstrates that the HolaBelle Defendants intentionally targeted the sale of Mallosticks to Connecticut.  Thus, the question is whether the sale of Mallosticks in Connecticut-based Stop & Shops is substantial.  "[V]enue by substantial sales requires, at minimum, that the plaintiff allege some non-nominal amount of sales in the district."  *Id.* at *3.

21

In evaluating whether sales count as substantial, courts consider the percentage of a defendant's total sales that occurred in the forum state. *See N. Food I/E, Inc. v. OCM Globe Inc.*, No. 21-CV-1813 (MKB), 2022 WL 2812204, at *7 (E.D.N.Y. Mar. 28, 2022) (collecting cases). Some courts have found that less than one percent of total sales having occurred in the forum is insufficient for venue. *E.g.*, *Detroit Coffee*, 2018 WL 941747, at *3 (finding that 0.1% of sales is insufficient). Similarly, other courts have found 1.3% to 1.5% of total sales as insufficient to support venue, where substantial sales occurred in another district. *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 212–13 (D.D.C. 2014) (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.3d 312, 314 (D.C. Cir. 1985) (Ginsburg, J.)). On the other hand, courts have credited 4% of sales as amounting to substantial for venue purposes. *Snack Joint LLC, v. OCM Grp. USA, NJ, Inc.*, No. 2:21-CV-818 (BRM) (JSA), 2021 WL 4077583, at *5–6 (D.N.J. Sept. 8, 2021) (citing *Tefal, S.A. v. Prods. Intern. Co.*, 529 F.3d 495, 496 (3d Cir. 1976)). As TLLC notes, still other courts have found venue under § 1391(b)(2) where less than one percent of infringing goods were sold in the relevant district, but where the defendants targeted the district with marketing and sales. *Mola, Inc. v. Kacey Enters., LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *4–7 (W.D.N.Y. Aug. 21, 2011). Ultimately, though, as the Second Circuit has cautioned, venue analysis should not devolve into a purely quantitative analysis.

The Court finds that Plaintiff has not met its burden of establishing the propriety of Connecticut as a venue, based on the present record. The Court's venue inquiry must focus on the sale of Mallosticks in Connecticut as the basis of Plaintiff's trademark claims. Accordingly, the Court's analysis focuses on the $5,875.20 worth of Mallosticks purchased by Stop & Shop, some portion of which were offered for sale in Connecticut stores. HolaBelle has provided a spreadsheet of its total sales between 2020 and 2023. ECF No. 107-5 at 2. For this period, HolaBelle sold

$355,644.48 worth of Mallosticks.  *Id.*  Even assuming that the full $5,875.20 worth of Mallosticks purchased by Stop & Shop for resale was sold in Connecticut, that amount would be only 1.65% of all Mallosticks sales between 2020 and 2023.  This percentage is closer to the range that courts have found insufficient for venue, and is based on a significant assumption regarding sales within Connecticut—especially in light of the fact that the Mallosticks were delivered to Massachusetts, where Stop & Shop has 36 more locations than it has in Connecticut.  Plaintiff's "qualitative" evidence does not push the needle further.  As the Court has already found, TLLC has not provided evidence that the HolaBelle Defendants targeted Connecticut or had any knowledge that infringing Mallosticks would enter the state.  Without additional evidence as to the number of Mallosticks sales in Connecticut and whether the HolaBelle Defendants intended to reach Connecticut, the Court cannot find that a substantial part of the events giving rise to TLLC's claims occurred in Connecticut.

However, as with personal jurisdiction, there remains an open question as to how many Mallosticks were offered for sale, or ultimately purchased, in Connecticut and whether the HolaBelle Defendants intentionally targeted Connecticut.  Accordingly, the Court will allow for a period of discovery to uncover additional evidence related to venue.

## VI.   JURISDICTIONAL AND VENUE DISCOVERY

The bar for granting "jurisdictional discovery is low . . . ."  *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014) (summary order).  For instance, it is appropriate to grant jurisdictional discovery where a plaintiff has "made a sufficient start toward establishing personal jurisdiction."  *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) (quoting *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547 (S.D.N.Y. 1994)).  If a plaintiff has identified a genuine issue of jurisdictional fact, discovery is

appropriate even in the absence of a *prima facie* showing as to personal jurisdiction. *E.g.*, *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 761, 765 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003) (*per curiam*)). As noted above, district courts have considerable discretion in determining how to best handle jurisdictional questions. *Leon*, 992 F. Supp. 2d at 194. While a plaintiff is not entitled to jurisdictional discovery in every situation, it may be appropriate when "the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Id.*

As for venue, while the Second Circuit has not addressed whether limited discovery is available for venue discovery as with jurisdictional discovery, courts in this Circuit have granted venue discovery by applying the jurisdictional discovery rules. *See Berall v. Teleflex Med. Inc.*, No. 10-CV-5777 (LAP), 2022 WL 2666070, at *5 (S.D.N.Y. July 11, 2022) (applying jurisdictional discovery principles to venue-related discovery); *see also Mayborn (UK) Ltd. v. Comotomo Inc.*, No. 22 Civ. 694 (PGG), 2023 WL 22616, at *3 (S.D.N.Y. Jan. 3, 2023) (collecting cases in the patent context); *Patel v. Clane Gessel Studio*, No. 22 Civ. 10964 (GHW) (RFT), 2023 WL 8280498, at *1 (S.D.N.Y. Nov. 30, 2023) (ordering venue and jurisdictional discovery simultaneously). The HolaBelle Defendants have not suggested that venue-related discovery would be inappropriate. Accordingly, the Court addresses both venue and personal jurisdiction discovery in reference to the standard for granting jurisdictional discovery.

TLLC has demonstrated jurisdictional and venue discovery is warranted. While it is on its way to making a *prima facie* showing of personal jurisdiction and a showing of venue, there are genuine issues of jurisdictional and venue-related fact concerning, among other things, HolaBelle's knowledge that its distribution arrangements with Heritage and Encore would lead to

sales of Mallosticks in Connecticut, and whether a substantial portion of the events underlying TLLC's claims occurred in Connecticut.  The Court will therefore permit TLLC to engage in discovery related to personal jurisdiction over the HolaBelle Defendants and related to the propriety of venue.  The HolaBelle Defendants are also permitted to conduct discovery during this timeframe as well, to support their arguments as to jurisdiction and venue.

The Court reminds the parties that discovery must be limited to the issues of personal jurisdiction and venue discussed herein.  The parties may take discovery of each other and of third parties.  The period of discovery will be limited to 90 days.  Following the period of discovery, the HolaBelle Defendants may renew their motion to dismiss, if appropriate.

## VII.   CONCLUSION

For the reasons described herein, the HolaBelle Defendants' motion to dismiss is DENIED without prejudice to refiling following a ninety-day period of jurisdictional and venue-related discovery, which shall end on **September 10, 2024**.  Following the period of jurisdictional discovery, the HolaBelle Defendants must either answer the amended complaint or renew their motion to dismiss by **September 24, 2024**.


**SO ORDERED** at Hartford, Connecticut, this 12th day of June, 2024.


  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE